Statement.
MONROE, J.
The contestee prosecutes this appeal from a judgment of the district court affirming an adverse ruling made by the Register of the State Land Office In a *685 contest concerning his and the contestants’ rights in the matter of the purchase from the state of a certain tract of land in the parish of Iberia. The facts presented by the record, so far as they need be stated, are as follows: In 1852 Louis St. Marc Darby acquired from J. O. Segura a large body of land described as “comprising that whole space and extent of land owned by vendor in the Grand Marais, contiguous to Lake Tasse, on the east, and south of the Peebles Oanal, which runs into that lake,” and, as he already owned the land which in part, surrounded the tract so acquired, the latter became at once, or was thereafter, included within the fences by which his property was inclosed, save on the side next to the lake, the waters of which served the purposes of a fence. In the course of time, however, the waters of the lake gradually receded, and, as they did so, Darby, and after him, his widow and his heirs, extended their possession to the land which was thus uncovered, pasturing and penning their stock on it, and renting it to others for pasturage, butchering their cattle there, cutting such firewood therefrom as the land afforded, warning off trespassers, paying such taxes as were assessed, and making it part of a dairy farm from which they have been selling butter, milk, etc. In 1904 defendant conceived the idea that a tract of 160 acres, including that of which the Darbys were thus in possession, was open to entry for homestead purposes; and on June 24th of that year, without the knowledge of the Dar-bys, caused an opening to be made in their fence, through which he entered, with some workmen and material, and, having instructed the former to clear the ground and erect buildings, hastened to make and forward to the register of the land office an affidavit, reading in part as follows:
“Personally appeared * * * Albert G. Em-mer, who, after being first duly sworn, * * =•• declared * * * that he is in possession of the following described, improved, and cultivated lands belonging to the state, * * * to wit: One hundred and sixty acres. * • * He further declares that he has been in continuous possession of said land since the month of June 24, 1904, and has cultivated and improved the same to the following nature and extent, to wit: Am presently erecting a two-roomed dwelling and kitchen, the rooms measuring 12x12 and the kitchen 10x10; one barn for farm horses and farming utensils; fencing, and am actively at work on said lands. He further declares that he makes this affidavit for the purpose of filing same in the office of the register of the state land office, to preserve the rights and privileges granted him, as an actual settler, under the provisions of Act 21 of * * • 1886.”
Later in the day (June 24th), upon returning to the locus in quo, he found that one of the Darbys had repaired the fence, and he was warned against breaking it again, and he appears to have abandoned further proceedings until August 30th, when he caused Darby to be arrested, and, in his absence, again broke or opened the fence, and thereupon the Darbys stopped him by a writ of injunction. In the meantime the register had informed him that the land had not been surveyed and was not open to entry, whereupon he asked that a survey be ordered, and his request was complied with. Before the survey was made, however, Louis P. Bryant, as attorney for the Darbys, presented to the register a sworn petition, alleging that they were in possession, and, with their ancestors, had been so for many years, without disturbance, save that occasioned by the unlawful entry of the contestee; further alleging that, should the land be opened to entry, they were entitled to a preference over any other applicant, and praying that their petition be taken as a notice of possession, and that notice be served on them, through Thomas J. Hernán, of Baton Rouge, whenever said land should have been surveyed and opened to entry. In July, 1905, Kernan received the notice referred to, and, within six months, applied, in the name of his clients, to enter the land, tendering, first, 10 cents an acre, and then $5 an acre, both of which tenders were refused, because of the pendency of the contestee’s application, *687 and thereupon the matter was heard by the register, who ruled in favor of the contestants, saying, inter alia:
“The oral testimony establishes, by a clear preponderance of evidence, that the heirs of Darby and their authors have been continuously in possession of the land for 'many years. I am of opinion, therefore, that they are entitled to the right of pre-emption and pre-entry granted to actual possessors by Act No. 21, p. 31, of 1886, and the register is without authority to allow entry of said land to any one else. The application of Dr. Albert G. Emmer for said land is therefore rejected, and the heirs of Darby will be allowed to enter said land in accordance with their application on file in this office.”
This ruling was affirmed by the district court in the following terms, to wit:
“It is therefore * * * decreed that the said decision of A. W. Crandall, register, * * * be, and the same is hereby, confirmed in all its parts, and the right of pre-emption and pre-entry on the land described in the petition and application to purchase filed by them [the appellees! in the state land office * * * is hereby recognized as existing in their favor, and they are decreed entitled to enter said land in accordance with their said application. The said land described in the application of said appellees, and as to which the right of pre-emption and pre-entry is hereby granted and recognized in their favor is that described as follows, to wit: All that certain tract or parcel of land included between the northerly, boundary line of section 10, the southwesterly boundary line of section 2, the southwesterly boundary line of section 11, the southwesterly boundary line of section 56, township 11 south, range 6 east, all in township 12 south, range 6 east, and the prolongation of the easterly boundary line of the lands of Alphonse Landry to its intersection with the boundary line of the lands of Ozeme Segura and S. M. Darby, deceased, assignee of Ozeme Se-gura, containing an area of 70 acres, more or less.”
We may here remark that the only plat of survey that we find in the record is that made pursuant to the order of the register by Guilfoux, surveyor, upon which the different sections (referred to in the foregoing description) are designated by new numbers, which are not identified with the old, or are not numbered at all; the 160 acres sought to be entered by the appellant being represented by the irregular tract indicated on the subjoined sketch by the letters, A, B, C.

*689 As tile land described in the judgment appealed from is said to be wholly in township 12 S., range 6 E., the description would seem to apply either to the tract indicated on the sketch by the letters D, E, E, G, 0, or the letters D, H, E, E, G, 0, as the “prolongation of the eastern boundary” of the lands of Alphonse Landry follows the line D, E, or the line D, E. The litigants, however, seem to understand to what land the judgment refers, and the appellees make no complaint of the judgment.
Opinion.
Act No. 21, p. 55, of 1871, is entitled “An act to secure homesteads to actual settlers on the public lands of the state,” and it provides that (section 1) any citizen of the state, being 21 years old, or the head of a family, may enter a quarter section upon which he may have filed a pre-emption claim, or which may, at the time of making the application, be subject to pre-emption, to be located, in a body, in conformity to the legal subdivisions, and after the same shall have been surveyed; that (section 2) the person applying for the benefit of the act shall make affidavit before the register that he, or she, is the head of a family, or is 21 years old, and that the application is made for his, or her, exclusive benefit, and for the purpose of actual settlement and cultivation; and that (section 7) nothing in the act shall be construed as impairing any existing pre-emption rights. And there are other provisions which need not be recited.
Act No. 21, p. 31, of 1886, is entitled:
“An act for the protection of actual settlers on state lands, defining the mode and manner by which such lands, possessed, improved or cultivated, may be entered or purchased from the state of Louisiana, and regulating the duties of the register of the state land office in reference thereto.”
And its provisions, so far as need be quoted, read as follows:
“Section 1. * * * That no purchase or entry of any public lands shall be allowed, when previous thereto such lands have been possessed, or improved, or cultivated by any person holding- or claiming adversely to the party seeking to-purchase or enter the same, and such possessors or improvers shall have the right of pre-emption and pre-entry of the land so possessed, improved: or cultivated, to be exercised either under the general laws of the state, or under the provisions of this act, in accordance with the rules and regulations adopted by the register • * *■ and not inconsistent herewith. .
“Sec. 2. * * * When a portion of a quarter section * . * * has been possessed or improved, no portion * * * shall be liable to entry or purchase except by the possessor, or-by those who, after his death, succeeded to his rights, as widow or heirs.
“Sec. 3. * * * It shall be competent for any person in possession * * * to file in the office of the register * * * a declaration giving his post-office address and setting forth that he is in possession of land belonging to the state,, which shall be described by reference to the United States survey, or in some other specific- or determinate manner by which the said lands may be identified, which said declaration shall be sworn to by the claimant and by two witnesses who shall, in their affidavits, diselose-their personal' knowledge of the nature and extent of the possession and the improvements of the claimant, and how long such may have continued, and the filing of such declaration of' possession shall be notice of possession of the tract of land by the declarant to the state register * * * and to any person or persons seeking to enter the same, and shall entitle the-parties to notice of all further proceedings in the state land office, except as set out in the following section ; provided, that the omission to file such declaration shall not authorize the entry or location upon any lands belonging to the-state or occupied, possessed or cultivated by a party or parties not seeking to make such entry or location.
“Sec. 4. * * * That the filing of such declaration and affidavits shall vest in the declarant the right of pre-emption and pre-entry, which must be exercised not later than six months after the register * * * shall notify the declar-ant, his widow or heirs, that the lands described in such declaration are open for entry, and it shall be the duty of the register * * * to issue such notice when such lands are ready for-entry or purchase, when such declaration has been filed, or when the register otherwise learns that there has been an actual settler or improver-in possession of any unincumbered lands of the state.
“Sec. 5. * * * That, within six months after receiving notice from the state register that the lands possessed by him are open to purchase or-sale, any actual settler who has filed a declaration or who is in possession without having-filed such declaration, shall enter the lands so possessed, either by purchasing the same under-the general state laws, or by entering the same under the provisions and conditions of the homestead act, being act No. 21 of 1871, provid *691 ed however, that when the possession and settlement has continued more than five years and proof thereof be made, under rules and regulations to be established by said register, the preliminary affidavit and proof may be dispensed with, and the patent for lands shall be issued on the payment of ten cents per acre; and provided, further, that the possession, improvement and settlement referred to in this act shall be only for agricultural or homestead purposes, and that the cutting, floating, hauling or sawing of logs or trees shall not be regarded as possessory acts unless they were accompanied by cultivation, or the cutting of timber was done in good faith for the purpose of clearing the land for farming purposes; and provided further, that not more than 160 acres of land can * * * be acquired by any person, under the provisions of this act, and, in cases where there are conflicting claims of possession * * * the right thereto shall be decided by the * * * register -in accordance with this act and other laws applicable thereto, and with the principles of equity.”
Section 6 says that the provisions of the act shall not apply to settlers on sixteenth sections, and repeals all laws inconsistent with its provisions.
For the purposes of the controversy between the appellant and the appellees, it is unnecessary to go any further into the examination of the law. The appellant states in the affidavit of June 24, 1904, on which he relies, that he makes it “for the purpose of filing same in the office of the register * * * to preserve the rights and privileges granted him, as an actual settler, under the provisions of Act 21 of * * * 1886”; and he must stand or fall by that proposition. It is evident, however, from a reading of the title and text of the act in question, and applying them to the admitted facts presented by the record, that the law upon which appellant relies was intended for the benefit of persons situated as are the appellees, and that it granted, and grants, no rights or privileges whatever, quoad the land in dispute, to the appellant, and affords no ground upon which he can justify his tortious intrusion upon the actual, peaceful, and lawful possession of the appellees, or upon which he can properly rest the affidavit, which, with that unlawful proceeding, constitute the basis of his pretentions. He was not upon the 24th of June, 1904, nor, so far as this record shows, has he ever been, in possession of the land claimed by him, within the contemplation of that law; for he no more acquired such possession by breaking or opening the ap-pellees’ fence and entering therein than he would have done if he had first slain the appellees, and had thereafter maintained himself on the property, in defianee of the officers of the law and by force of arms. And, having himself no rights in the property, the appellant has no standing to ‘assail the title which the appellees have acquired. The judgment appealed from is accordingly affirmed.